IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| PORT OF ARLINGTON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Case No. 08-1344-KI |
| | ) | |
| v. | ) | OPINION AND ORDER |
| | ) | |
| UNITED STATES DEPARTMENT OF THE ARMY, ARMY CORPS OF ENGINEERS, | ) ) ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| THE CONFEDERATED TRIBES OF THE UMATILLA INDIAN RESERVATION, *et al.*, | ) ) ) | |
| | ) | |
| Intervenor-Defendants. | ) | |
| | ) | |

    Daniel H. Skerrit
    Paul W. Conable
    Steven D. Olson
    Mark L. Cushing
    Tonkon Torp LLP
    1600 Pioneer Tower
    888 S.W. Fifth Avenue
    Portland, Oregon  97204

        Attorneys for Plaintiff

    John C. Cruden
    Acting Assistant Attorney General
    Robert H. Foster
    Andrew "Guss" Guarino
    Department of Justice
    Environment and Natural Resources Division
    1961 Stout Street, 8th Floor
    Denver, Colorado  80294

        Attorneys for Defendant

    John W. Ogan
    Josh Newton
    Christian Malone
    Karnopp Petersen LLP
    1201 N.W. Wall Street, Suite 300
    Bend, Oregon  97701-1957

        Attorneys for Intervenor Defendants The Confederated Tribes of the Warm
            Springs Reservation of Oregon

KING, Judge:

The Port of Arlington ("Port") brings suit against the Army Corps of Engineers ("the Corps") challenging the way in which the Corps dealt with the Port's applications for a Section 10 Rivers and Harbors Act permit and a Section 404 Clean Water Act permit. The Confederated Tribes of the Umatilla Indian Reservation ("CTUIR" or "Umatilla Tribe"), the Confederated

Page 2 - OPINION AND ORDER

Tribes and Bands of the Yakama Nation, the Nez Perce Tribe, and the Confederated Tribes of the Warm Springs (collectively, "the Tribes") are defendant-intervenors.  Before me is the Corps' Motion to Dismiss, or in the Alternative, for Summary Judgment (#54), and the Defendant-Intervenors' Joint Motions to Dismiss Pursuant to FRCP 12(b) (#51).  For the following reasons, I grant in part and deny in part the Corps' motion and grant the Tribes' motion.

## BACKGROUND

I.  Factual Background

I provide, as background only, the facts according to the Port of Arlington.

The Port of Arlington is a public entity that purchased property on the Columbia River from the Corps in 1967.  The 50 acres is located about nine miles east of the town of Arlington and one-quarter mile west of Willow Creek, a tributary of the Columbia River, in Gilliam County ("Willow Creek property").  With the construction and operation of the John Day Dam in 1968, the Columbia River flooded about 300 feet of the Willow Creek property.

In the 1990s, the Port and Gilliam County began investigating how to support the Arlington Landfill's ability to continue to accept solid waste from Multnomah, Washington and Clackamas Counties.  The landfill was faced with rising costs and environmental concerns in trucking waste from the Portland area through the Columbia Gorge.  The entities concluded that a barge docking facility would resolve these issues.  The Port cooperated with the Corps in locating appropriate property and concluded that the Willow Creek property was the best candidate.

In preparation for building a barge dock, the Port purchased seven acres of land between the proposed dock site and Interstate 84, negotiated an easement with Union Pacific and built a

bridge across the railroad tracks, which was completed in 2006. In order to pay for the project, the Port obtained an almost $2 million grant from the State of Oregon through the Connect Oregon initiative, Gilliam County produced money from its general fund, and the Port contributed some of its resources.

In 2005, the Port began working with the Corps to complete the necessary applications to build the barge dock.

In May 2006, the Umatilla Tribe requested information from the Corps about the project, including the Corps' 1999 Cultural Survey of the Willow Creek property.

On June 26, 2006, the Port submitted its application for a Section 10 permit to build dock pilings on the bed of the Columbia, and a Section 404 permit to install rock on the river bed for a dock ramp.

The Corps issued a public notice for a permit, or Letter of Permission ("LOP"), for the barge dock on November 29, 2006, but neglected to mention the Section 404 permit in the notice. The Umatilla Tribe did not comment on the proposed project[1] and on February 21, 2007, the Corps issued a LOP allowing the Port to begin constructing the barge dock. Recognizing its mistake in failing to mention the Section 404 permit, the Corps issued a second notice on February 23, 2007 to correct its error.

On March 19, 2007, the Umatilla Tribe objected to the barge dock project, asserting that it would be located on a "usual and accustomed fishing station" under the Umatilla Tribe's 1855 Treaty with the United States. The Corps asked the Port to stop work, which the Port did. At

---

[1]The Umatilla Tribe notes that it was identified in the letter as a recipient of the letter, "but there is no confirmation that the Corps ever sent the letter or that the Umatilla Tribe ever received it." Tribe Mot. at 8.

Page 4 - OPINION AND ORDER

this point, the dock was almost complete and the Port had spent almost $3 million.

In April 2008, the Corps revoked the Port's Section 10 Rivers and Harbors Act permit, and denied the Port's Section 404 Clean Water Act permit, because the barge dock would interfere with a "usual and accustomed fishing station" of the Umatilla Tribe under the 1855 Treaty between the United States and the Umatilla Tribe. The Port administratively appealed the decision and the Corps' Northwest Division vacated the April 4 Order and remanded to the Portland District. On October 9, the Portland District again revoked and denied the permits, finding that the 1855 Treaty gives the CTUIR rights to usual and accustomed fishing grounds and stations and that the barge dock would interfere with those rights.

II.     Procedural Background

The Port alleged three claims against the Corps in its first Complaint. In its first claim, the Port alleged that the Corps' revocation of its permit for a barge dock was arbitrary and capricious under the Administrative Procedures Act ("APA"). It alleged in a second claim a request for a preliminary injunction. Finally, it alleged in a third claim a request for declaratory relief, including a request for a declaration that: "Congress intended to abrogate treaty rights to fishing sites inundated by the Columbia River Dams, including the John Day Dam, and did not intend that those rights would remain in effect and move onto private property when they were inundated." Complaint ¶ 58(d).

The Port also filed a Motion for Preliminary Injunction because it was concerned about the safety of its partially built barge dock. In response, the Portland District Commander agreed in writing that the Corps would not touch the barge dock without first giving 60 days' written notice. On the basis of this promise, the Port withdrew its motion.

Page 5 - OPINION AND ORDER

The Tribes filed unopposed motions to intervene. The motions were granted.

The Port filed a First Amended Complaint on April 10, 2009 making the same first and second claims, but paring down its request for declaratory relief. It requested only a declaration (1) that "[t]he Port's dock facility is not located on the site of a usual and accustomed fishing station of the CTUIR or any of the defendant/intervenors under the 1855 Treaties or any other treaty between any of the defendant/intervenors and the United States;" and (2) that the Corps may not withhold documents relevant to the CTUIR's application to list the Port's property on the National Register of Historic Places.

The Corps has filed a Motion to Dismiss, or in the Alternative, for Summary Judgment against all of the claims.

The Tribes have filed a Motion to Dismiss the first and second claims.

## LEGAL STANDARDS

A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(1) addresses the court's subject matter jurisdiction. The party asserting jurisdiction bears the burden of proving that the court has subject matter jurisdiction over his claims. Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994). A Rule 12(b)(1) motion may attack the substance of the complaint's jurisdictional allegations even though the allegations are formally sufficient. St. Clair v. City of Chico, 880 F.2d 199, 201 (9th Cir. 1989).

## DISCUSSION

I.  First and Second Claims for Relief

The Port alleges in its First Amended Complaint that the Corps' decision to revoke the Port's Section 10 Rivers and Harbors Act permit and to deny the Port's Section 404 Clean Water

Page 6 - OPINION AND ORDER

Act permit is unlawful, arbitrary and capricious, and an abuse of discretion under the Administrative Procedures Act. Additionally, the Port contends that the decision was outside the Corps' authority and was the result of bias or misunderstanding of the Corps' fiduciary relationship with the Umatilla Tribe.

The Corps moved to dismiss the First Claim, or in the alternative, for summary judgment. At the oral argument on August 5, I denied the Corps' motion for the reasons I stated on the record.

The Port's Second Claim for Relief is one for a "Preliminary Injunction under 5 U.S.C. § 705." The Port seeks a preliminary injunction "enjoining the Corps from removing the partially constructed dock from the River, or otherwise disturbing or interfering with the Port's construction and improvements, pending conclusion of this review proceeding and any remand or appeal proceeding therefrom." First Amended Complaint ¶ 56.

Both the Corps and the Tribes moved to dismiss the Second Claim. Again, at the oral argument on August 5, for the reasons stated on the record, I granted the Corps' and the Tribes' motions to dismiss this claim.

II.     Third Claim for Relief

Finally, the Port alleges a claim for declaratory relief asking for a declaration (1) that "[t]he Port's dock facility is not located on the site of a usual and accustomed fishing station of the CTUIR or any of the defendant/intervenors under the 1855 Treaties or any other treaty between any of the defendant/intervenors and the United States"; and (2) for a declaration that the Corps may not withhold documents relevant to the CTUIR's application to list the Willow Creek property on the National Register of Historic Places. In its First Amended Complaint, the

Port lists 28 U.S.C. § 1331, Section 706 of the APA, and the Declaratory Judgment Act as the bases for the Court's subject matter jurisdiction.

I took the motions related to this claim under advisement at the August 5 hearing.

A.      <u>The First Declaration--Location of the Dock Facility</u>

As an initial matter, all the parties admit that there is no justiciable controversy between the Port and the Tribes, other than the CTUIR.  Accordingly, I dismiss the Port's claim for a declaration that the Port's dock is not located on the site of a usual and accustomed fishing station of the Yakama Nation, the Warm Springs Reservation, or the Nez Perce Tribe.  The Corps did not consider these Tribes' fishing rights in revoking the permits, and the First Amended Complaint sets out no factual allegations to support the requested declaratory relief as to these Tribes.

With regard to the remaining claim about the Umatilla Tribe's fishing rights, the Port candidly argues that in its Third Claim it is seeking "a declaration that the Corps incorrectly ruled that a treaty fishing site exists on the Property." Pl's. Mem. in Opp. to Corp's Mot. at 14.  The Port has inappropriately plead its claim challenging agency action as two claims–one under the APA and one under the Declaratory Judgment Act.  While 28 U.S.C. § 1331 provides jurisdiction, it does so only within the scope of the APA claim.  Furthermore, the APA waives sovereign immunity only for final agency actions and agency actions made reviewable by statute. 5 U.S.C. §§ 702, 704.  The Port has not alleged the Corps' decisions are reviewable other than as final agency actions.  The Port, then, is limited to the relief afforded by the APA, which includes declaratory relief.  5 U.S.C. §§ 703, 706.  In sum, this portion of the Port's Third Claim is dismissed with prejudice.

Page 8 - OPINION AND ORDER

B.     <u>The Second Declaration--Documents Related to National Register of Historic Places</u>

As for the second requested declaration related to the Umatilla's application to the National Register of Historic Places, this is properly a claim under the Freedom of Information Act ("FOIA"), and the Port has failed to exhaust its administrative remedies. 5 U.S.C. § 552. The Port's FOIA appeal is currently pending, so the claim is premature. The Port offers no argument in disagreement. It simply reports that the parties have been negotiating a confidentiality agreement allowing the Port to review the documents. Accordingly, the remaining portion of the Port's Third Claim is dismissed.

## CONCLUSION

Based on the foregoing, the Corps' Motion to Dismiss or, in the Alternative, for Summary Judgment (#54) is DENIED in part and GRANTED in part. The Tribes' Motion to Dismiss (#51) is GRANTED. The Second and Third Claims of the Port's First Amended Complaint are dismissed.


Dated this    27th    day of August, 2009.


         /s/ Garr M. King
         Garr M. King
         United States District Judge